Cranch, [8 U. S.] 328; [Wheaton v. Sexton,] 4 Wheat. [17 U. S.] 506.

The objection that the conveyance was made to Woodward and Foster, instead of Stanley, the purchaser at the sale, seems not to be entitled to much consideration. If this be a matter of contest, it must arise between the purchaser and the persons who received the conveyance. So Cutter was in no respect prejudiced by the act, it is not perceived how he can complain. He has received the consideration for which the land sold, and it can be a matter of no importance to him, whether the land was conveyed to the purchaser or to some other person. The title has passed out of the defendant by operation of law, and the right to it may be a matter of controversy arising out of acts subsequent to the sale. But no objection is perceived to the deed as made to Woodward and Foster. Whether it was so made on the order of the purchaser or not, is not material; as it appears on the same day the auditors executed the deed, Woodward and Foster conveyed the land to Stanley. From this fact it may be presumed that the conveyance was first made to Woodward and Foster, with the consent or at the request of Stanley, and he immediately afterwards received the conveyance from them. No objection is perceived to the auditor's or the sheriff's making a deed to any individual at the request of the purchaser at the sale, provided the act is done in good faith. This case was taken to the supreme court on a writ of error, and the judgment of the circuit court was affirmed. [Voorhees v. Jackson,] 10 Pet. [35 U. S.] 449.

[NOTE. The supreme court, per Mr. Justice Baldwin, in affirming this decision, assigned as its reasons that, the court of common pleas of Ohio, at the time of the proceedings, being a court of general civil jurisdiction, its record proved itself without reference to the evidence upon which the adjudication was made; that the judgment itself was evidence of the right of the plaintiff to the thing adjudged, and that any error of the court in rendering the judgment, however apparent, could only be examined by the appellate court, and not in a collateral proceeding; that the order of sale was a lawful authority to the auditors to sell, executed by virtue of the authority vested in the court, and the deed by the auditors passed the title to the premises in controversy to the purchaser. Voorhees v. Jackson, 10 Pet. (35 U. S.) 449.]

---

## Case No. 940.

### BANK OF THE UNITED STATES v. WASHINGTON.

[3 Cranch, C. C. 295.][1]

Circuit Court, District of Columbia. May Term, 1828.

BANKING—PAYMENT OF CHECK—EVIDENCE OF FUNDS—WITNESS—PRIVILEGE.

1. Payment of a check by a bank is prima facie evidence of funds, and that the apparent

[1] [Reported by Hon. William Cranch, Chief Judge.]

state of the funds upon the books of the bank justified the payment; and it is incumbent upon the bank to prove the error if there was any.

[See Bank of Alexandria v. McCrea, Case No. 849; Bank of U. S. v. Wilson, Id. 943.]

2. A bookkeeper of a bank is not obliged to answer a question, the answer to which, might charge himself with the loss.

At law. Assumpsit [by the Bank of the United States against George C. Washington] for money had and received by an overdraft paid by the bank by mistake, owing to wrong addition. The plaintiffs proved all the debit side of their account which consisted of checks drawn by the defendant and paid by the plaintiffs. They proved also that it was their usual practice to pay according to the apparent funds in their leger without examining further into the actual state of the funds.

THE COURT was of opinion that the payment of the checks by the bank is prima facie evidence of funds; and CRANCH, Chief Judge, and THRUSTON, Circuit Judge, were of opinion that the payment of the checks by the bank was also prima facie evidence that the apparent state of the funds upon the books justified the payment, and that it was incumbent on the plaintiffs to prove error in the account, upon the apparent balance of which the check was paid.

The plaintiffs then offered Mr. C. W. Forrest, (who was bookkeeper of the bank at the time,) and asked him whether, at the time a certain check for $1,900 was drawn, the account upon the leger showed a balance to that amount or more in favor of the defendant.

The witness objected to answer this question, because the bank had sued him upon his bond, intending to charge him with the balance of this account, so that he cannot answer, in one way, without charging himself.

THE COURT (nem. con.) refused to compel the witness to answer the question. Verdict for the defendant.

---

## Case No. 941.

### BANK OF THE UNITED STATES v. WATTERSTON.

[4 Cranch, C. C. 445.][1]

Circuit Court, District of Columbia. March Term, 1834.

NEGOTIABLE INSTRUMENTS — NOTICE OF DISHONOR —MISTAKE IN DATE OF NOTE.

A mistake in [the recital of] the date of the note will not invalidate the notice given to an indorser.

[See Bank of Alexandria v. Swann, 9 Pet. (34 U. S.) 33.]

At law. Assumpsit [by the Bank of the United States] against [George Watterston] an indorser. The notice left by the notary with the defendant was of a note dated in 1832, when the true note was dated in 1830. In all other respects the notice was correct.

[1] [Reported by Hon. William Cranch, Chief Judge.]

THE COURT (nem. con.) was of opinion upon the authority of Mills v. Bank of U. S., 11 Wheat. [24 U. S.] 431, that the notice was sufficient.

Judgment for the plaintiff.

BANK OF THE UNITED STATES, (WHITING v.) See Case No. 17,576.

## Case No. 942.
### BANK OF THE UNITED STATES v. WILLIAMS.

[3 Cranch, C. C. 240.][1]

Circuit Court, District of Columbia. Dec. Term, 1827.

EXECUTORS AND ADMINISTRATORS—PROBATE PRACTICE—AUDITOR'S REPORT — EVIDENCE — EXCEPTIONS.

The report of the auditor under the Maryland act of 1785, c. 80, is prima facie evidence of the amount due, upon the principles and evidence stated in the report; and if those principles, and that evidence, are approved by the court, so much of the report may be read to the jury, as shows the balance so stated, although before the jury is sworn, the defendant except to the evidence admitted by the auditor, and to his calculations, conclusions, and statements.

At law. Assumpsit [by the Bank of the United States against Brooke Williams, administrator of William B. Williams] for money had and received by the defendant's intestate, as second teller to the plaintiff's use. The cause had been referred to Mr. Redin, as auditor, under the act of Maryland, 1785, c. 80, § 12, whose report was filed on the 19th of December, 1825.

Mr. Jones, for the defendant, this morning, (December 31, 1827,) before the jury was sworn, filed what he called exceptions, which were as follows: "The defendant excepts to the auditor's report in this case, 1st. on the ground of the evidence and statement therein contained, and 2dly. on the ground of the calculations and conclusions drawn from the same. The defendant excepts to all and singular the evidence, examined before the auditor, both written and oral; and excepts to the auditor's statement, and report of the same. The defendant excepts to all and singular the statements, and calculations founded thereon as reported by the auditor. W. Jones, for defendant." Upon the trial he objected to the report as evidence.

But THE COURT (nem. con.) permitted the plaintiff to read the auditor's statement of the balance, which he found due upon the evidence and principles stated in his report, which evidence and principles the court is of opinion were correctly admitted and acted upon by the auditor. The part permitted by the court, to be read to the jury, was as follows: "The auditor finds and reports that the balance of loss and gain account, and the total deficiency in William B. Williams's ac-

counts, as second teller from the 21st of May, 1818, when he commenced the duties of the office, to the 25th of August, 1819, when he ceased to perform them, is the sum of one thousand one hundred and ninety one dollars and three cents." Bills of exception were taken as in the case of the Bank of U. S. v. Johnson, at this term, [Case No. 919.] But the plaintiff became non-pros.

## Case No. 943.
### BANK OF UNITED STATES v. WILSON.

[3 Cranch, C. C. 213.][1]

Circuit Court, District of Columbia. Dec. Term, 1827.

BANKS AND BANKING—PAYMENT OF CHECK— EVIDENCE—PRODUCTION OF ACCOUNT.

1. The defendant had settled his account with the plaintiffs, and paid the balance then claimed. The plaintiffs afterwards changed the entries in their books, so as to show a balance still due to the plaintiffs, and presented him an account thus stated, which the defendant refused to admit or receive as a true statement of his account, but received it only as containing the then aspect of the plaintiff's books. The court refused to compel the defendant to produce that account, at the trial, unless accompanied by the defendant's affidavit of those facts.

2. Payment of a check, by the bank upon which it is drawn, is prima facie evidence of funds; especially when the checks have been surrendered to the drawer.

[Cited in Bank of Alexandria v. McCrea, Case No. 849.]

[See Bank of U. S. v. Washington, Case No. 940.]

Notice had been given by the plaintiffs to the defendant, [James C. Wilson,] to produce his bank-book at the trial. The defendant made affidavit that no bank-book was kept for him, during the transactions; and that he paid the balance demanded of him by the bank. He admits that several years subsequently, changes were made in the entries in the books of the bank, whereby a balance was made to appear against the defendant; that a statement of the accounts as then appearing, was tendered to the defendant, which he utterly refused to admit or receive, as a true statement of his account, and never did receive the same as such; but received it only, as containing the then present aspect of the books of the bank, and expressly denying that he owed a cent to the bank.

THE COURT ordered the account to be produced, but to be accompanied, if used in evidence, by the defendant's affidavit.

The defendant then demurred to the plaintiffs' evidence, and the plaintiffs joined in demurrer.

The plaintiffs read in evidence, to the jury, the checks drawn by the defendant on the plaintiffs, and by them paid; which checks had been cancelled by the bank, and delivered up to the defendant, upon the settle-

[1] [Reported by Hon. William Cranch, Chief Judge.]